Massachusetts General Hospital *vs.* City of Revere.

Suffolk.     April 1, 1963. — June 6, 1963.

Present: Wilkins, C.J., Spalding, Cutter, Kirk, & Spiegel, JJ.

*Public Welfare.     Needy Person.*

Under G. L. c. 117, § 24A, inserted by St. 1959, c. 584, a person unable to pay for hospitalization may seek it before applying for public assistance; he may be "in need of public assistance" if it appears to the hospital at the time his hospitalization begins that he is unable to avail himself of assets sufficiently rapidly to meet necessary hospital expenses in ordinary course; and the "emergency" recognized by a hospital in admitting him without assurance of reimbursement for expenses "necessarily incurred" encompasses the need for prompt hospitalization to avoid or prevent unreasonable risk, pain or physical impairment and to procure treatment or diagnosis which competent doctors would regard as unwise to delay as well as treatment for accidents or sudden illness. [220, 222–223]

At the trial of an action by a hospital against a city under G. L. c. 117, § 24A, inserted by St. 1959, c. 584, for reimbursement for necessary hospitalization furnished to a woman, findings by the trial judge, merely

that the woman "had no property," was "a married woman with no dependents" whose "husband had a steady job with a weekly take home pay of $56," that the couple had an equity of about $2,000 in a trailer in which they lived and owned an eleven year old automobile, and that these facts were known to the hospital at the time it admitted the woman, did not justify the denial of a request by the plaintiff for a ruling that if it "furnished necessary hospitalization . . . and . . . the patient was unable to pay for the hospital services when they were due" the defendant "as matter of law" must pay the plaintiff therefor; and a finding for the defendant was vacated and a new trial ordered.   [219, 223–224]

Statement as to the period of care furnished by a hospital to a patient for which the hospital may recover from the town of the patient's residence under G. L. c. 117, § 24A, inserted by St. 1959, c. 584.   [224–225]

CONTRACT.   Writ in the Municipal Court of the City of Boston dated April 6, 1961. ·

The action was heard by *Canavan*, J.

*Albert G. Tierney, Jr.,* for the plaintiff.

*Ralph F. Martino,* Assistant City Solicitor, for the defendant.

CUTTER, J.   In this action of contract brought in the Municipal Court of the City of Boston, the hospital seeks reimbursement of $586.59 for hospitalization furnished to one Mary Barney as follows: November 11 to 19, 1960, at $30.79 per day, $153.95, and January 21 to February 8, 1961, at $33.28 per day, $432.64.   The only issue at the trial "was whether . . . Mary Barney was a person within . . . [G. L. c. 117, § 24A] for whose treatment the . . . [hospital] was entitled to be reimbursed by the . . . city . . . ."[1]

The following facts were agreed.   Mary Barney "had no property."   She was "a married woman with no depend-

[1] The declaration alleged that hospitalization was furnished to Mrs. Barney "after notice in writing" to the city's board of public welfare "and until provision was made therefor," and that the hospital was not liable for Mrs. Barney's support.   The city in its brief concedes that Mrs. Barney's "hospitalization was necessary" and was "furnished."   In the light of the ambiguous statement in the report about the only issue at the trial, we assume that the parties and the trial judge proceeded on the theory that notice had been given as alleged and that the necessity of Mrs. Barney's prompt hospitalization was not disputed.   At a new trial, it will be open to the city then to require proof of the existence of reasonable medical necessity for prompt hospitalization for treatment or diagnosis.   If either of the parties made an improvident or ambiguous stipulation on that or any other subject it may be vacated if that will be "conducive to justice."   See *Loring* v. *Mercier,* 318 Mass. 599, 601.   See also *Symmes Arlington Hosp. Inc.* v. *Arlington,* 292 Mass. 162, 165.

ents.'' Her ''husband had a steady job with a weekly take home pay of $56.'' The Barneys had an equity of about $2,000 in a trailer in which they lived. They owned a 1949 Buick automobile. ''[O]ther than the foregoing, [the husband] had no assets whatsoever.'' These ''facts were made known to the hospital at the time of . . . [Mrs. Barney's] admission.''

The judge found that the Barneys possessed the assets listed above and added, ''I do not find that she was a needy person within the meaning of'' § 24A. ''[I]n view of . . . [his] finding[s] of fact,'' he denied a request for ruling, ''18. If . . . the . . . [hospital] furnished necessary hospitalization to Mary Barney . . . at the request of the patient, either express or implied, and . . . the patient was unable to pay for the hospital services when they were due as a matter of law all that remains for the . . . [city] to do is to provide the patient with hospitalization or pay the . . . [hospital] therefor.''[2] There was a finding for the city, made on March 27, 1962, before our decision on June 1, 1962, in two cases, *Massachusetts Gen. Hosp.* v. *Chelsea,* 344 Mass. 449, and 344 Mass. 452.

The Appellate Division dismissed a report, saying, ''To have requested the court to rule . . . that the . . . [hospital could] recover if it furnished necessary medical attention and the patient was unable to pay for the services when due, ignored the fact that on the evidence the court could find as a fact that no emergency existed and that, although she had no funds at hand, she was not a pauper be-

---

[2] The judge's findings of fact appear to have related only to the Barneys' financial situation and to have made no reference to the degree of need for Mrs. Barney's hospitalization. Because of his findings he also denied a request somewhat similar to that quoted above, ''13. . . . [The city] is liable to the . . . [hospital] if the court finds [that] the . . . [hospital] furnished hospitalization to Mary Barney, a resident of the . . . [city and] a person for whose support the . . . [hospital] is not liable and that Mary Barney needed hospitalization for her relief which continued until her discharge; that Mary Barney upon inquiry was unable to pay the charges for her hospitalization when due weekly and in full on discharge because she had no funds or property available for her need; that the . . . [hospital] notified and requested the . . . [city] in writing to provide for Mary Barney and that the . . . [city] made no provision for'' her.

cause of other circumstances." Earlier the opinion stated, "There are a vast variety of situations which require medical attention which do not require immediate relief." The opinion concluded, "[Mrs.] Barney was not brought to the hospital under emergency conditions. There is nothing in the report to indicate that she was in need of immediate relief." Thus, while the trial judge denied the requests on the ground that Mrs. Barney had ability to pay, the Appellate Division seems to have taken the view that there was no evidence that prompt hospitalization was medically required. From the decision of the Appellate Division, the hospital appealed.

The applicable statute is G. L. c. 117, § 24A (inserted by St. 1959, c. 584), which separated into two sections subject matter previously covered in § 24.[3] Section 24A reads in part, "If hospital care is furnished to a person *in need of public assistance* by any person not liable by law for his support, the town wherein he resides at the time his hospitalization begins . . . shall be liable for the expense of such care *necessarily incurred* under this chapter after notice and request made in writing to one or more members of the board of public welfare thereof, and until provision is made by them . . ." (emphasis supplied), subject to provisions which need not be discussed here. The words "in need of public assistance" were inserted in § 24 by St. 1928, c. 155, § 26, which substituted those words for the word "pauper."

In *Symmes Arlington Hosp. Inc.* v. *Arlington*, 292 Mass.

---

[3] Prior to the 1959 amendment, c. 117, § 24 (as amended through St. 1943, c. 481), read: "Every town shall be liable for any expense necessarily incurred under this chapter . . . for the relief of a person in need of public assistance therein by any person not liable by law for his support, after notice and request made in writing to one or more of the members of the board of public welfare thereof, and until provision is made by them. In case such relief is furnished to a person in a hospital, the town shall be liable for his support therein in a sum not exceeding . . . [limitation not relevant]." The 1959 statute left in § 24 only provisions for reimbursement for relief not related to hospital care. A principal purpose of the enactment of § 24A was probably to make clear that the town of the patient's residence, rather than the town where the hospital was situated, was liable for hospital expenses of a patient within § 24A. Cf. *Worcester* v. *Charlton*, 336 Mass. 525, 527–528, and cases cited.

162, 163–164, it was said, "A pauper is 'one residing or found in any town where he falls into distress, and stands in need of immediate relief.' *Shearer* v. *Shelburne,* 10 Cush. 3, 5, quoted in *City Hospital of Quincy* v. *Milton,* 232 Mass. 273, 275. . . . 'A person may have property and yet fall into distress, and be in need of immediate relief, from inability to avail himself of it. . . .' " Much of the language just quoted is obviously derived from what is now G. L..c. 117, § 14 (as amended through St. 1939, c. 39, § 1), relating to the liability of one town to another for the support of needy persons having a settlement in the former town. Section 14 is expressed in somewhat less general language than the present form of § 24A.

The *Symmes* case was decided upon facts which arose before February 1, 1929, when St. 1928, c. 155, § 26, became effective under § 59 of that statute. It dealt with the hospital treatment of three boys, admitted at different times, who "had been injured by accident." Each of them "remained at the hospital for two months or more, under treatment." This court held that a verdict could not properly have been directed for the Symmes hospital "for the entire expense of care and treatment for months." A new trial limited to the issue of damages was ordered, so that it might be established to what extent "continued relief . . . was not necessary" because parents or others might be able to pay for the treatment. The opinion, however, said, "The boys could be paupers, to whom the . . . [hospital] had a right to furnish relief at the expense of the . . . town . . . if their injuries demanded immediate relief not otherwise available, even though their parents might prove to be financially responsible. . . . [The hospital] was entitled to act on appearances of need. . . . The law does not contemplate that a person seriously injured or desperately ill, shall wait without surgical or medical attention until his wealth shall be appraised, his relatives discovered and their financial ability ascertained, or the place of his settlement determined." See *Smith* v. *Colerain,* 9 Met. 492, 495–497; *Charlestown* v. *Groveland,* 15 Gray, 15, 17.

In the first *Massachusetts Gen. Hosp.* case, 344 Mass. 449, the hospital had furnished hospitalization to a resident of Chelsea from July 29, 1960, until the date of her death about two weeks later. On July 26, she had withdrawn more than $1,600 from a savings bank. The trial judge had ruled, apparently because of this withdrawal, that the patient "was not a needy person within the meaning of the act." In ordering that a finding for Chelsea be vacated, this court said that the hospital "did not sustain the burden of proof for the fifteen days of hospitalization. The evidence warranted recovery for the duration of that emergency which was recognized by the . . . [hospital] on the [patient's] admission . . . . Conceivably this continued for the duration of . . . [the patient's] stay. . . . [T]he judge was not required to conclude that this was so. There was nothing to show the nature of the illness. The . . . ruling erroneously determined that, because of the withdrawal of funds . . . there could be no recovery for any relief . . . based on the appearance of immediate need. The evidence warranted a finding for the . . . [hospital] for at least one day and for such further reasonable time as the judge should conclude was encompassed within the emergency on which the . . . [hospital] acted when it admitted" the patient.

The statute and the cited cases are expressed in very general terms, but they at least establish (1) that Mrs. Barney was not obliged when in need of hospitalization, first to apply to the city for aid, for neither § 24A itself nor our decisions (see the *Symmes* case, at p. 164) establish any such requirement, which, in many instances, obviously would lead to dangerous delays; and (2) that both the old language of § 24 ("pauper") and also the somewhat vague statutory words of § 24A ("a person in need of public assistance") include a patient who appears to be unable to avail himself of his assets, if any, sufficiently rapidly to meet necessary hospital expenses in ordinary course. Section 24A and the decided cases, however, leave it more uncertain, in order to hold a city liable (a) how urgently or

immediately hospitalization must be required; (b) how far
the possession of assets, not readily liquidated rapidly, may
prevent a person from being "in need of public assistance"
under § 24A; and (c) to what extent and in what circum-
stances the city remains liable for continuing care.

As to the matter of urgency of treatment, the first *Massa-
chusetts Gen. Hosp.* case used, without defining, the term
"emergency," which is not found in § 24A. The term as
then used had no direct reference to the patient's financial
condition. We think that it must include any hospitaliza-
tion "necessarily incurred," in the sense that current good
medical practice would require that the hospitalization take
place promptly to avoid or prevent unreasonable risk, pain,
or physical impairment to the patient. The term cannot
be confined to treatment for accidents or for the sudden
onslaught of illness, but must also encompass hospitaliza-
tion for treatment or diagnosis which competent doctors
would regard it unwise to delay. We would be slow to at-
tribute to the Legislature an intention that lower stand-
ards of what is appropriate medical, surgical, and diag-
nostic attention are to be applied to persons receiving or
needing either temporary or long-term public assistance
than to persons insured for, or able promptly to pay for,
necessary hospitalization.

We view the trial judge's action in denying requests num-
bered 13 and 18 as based entirely upon his findings about
the Barneys' financial status, as known to the hospital at
the time of Mrs. Barney's admission (see fn. 1). The Bar-
neys' assets were the husband's weekly pay of $56 (a sum
less than the cost of two days' hospital care for Mrs. Bar-
ney), an eleven-year-old Buick automobile, and a $2,000
equity in a trailer. The promptly realizable cash or loan
value of the automobile and of the equity in the trailer is
not shown and, on this record, may not be inferred. The
owner of such assets might well have serious difficulty in
reducing them to cash, or in obtaining a loan secured by
these assets, in an amount sufficient to meet when due
nearly $600 of hospital bills. In the absence of a further

finding that the necessary funds could be secured season-ably because of these assets, the judge's subsidiary findings were not sufficient to make irrelevant the requested rulings numbered 13 and 18.

This nonprofit, charitable hospital was not obliged, as the trial judge correctly ruled, to extend credit to the Barneys. The judge may have intended to find that the Barneys' assets could be converted to cash sufficiently rapidly to meet the charges, but his findings do not seem to us to go that far. Rulings numbered 13 and 18 state in broad terms but with substantial accuracy the applicable law on the assumptions stated in the requests. These requests should have been granted or the findings should have been expanded to an extent sufficient to make the requests inapplicable.

As there must be a new trial, we comment upon one further matter. We held in the first *Massachusetts Gen. Hosp.* case that, upon a showing of an "emergency" in the sense already discussed, the hospital was entitled to rely upon appearances and admit Mrs. Barney as a person in need of immediate relief. If the hospital gave the statutory notice to the Revere board of public welfare, the hospital could then hold the city immediately and primarily responsible under § 24A "for the expense of such care necessarily incurred." This would include (a) all care reasonably determined by the hospital to be necessary at the time of admission to meet the medical situation then existing and requiring prompt treatment, and (b) all such care for at least a reasonable period of immediate care, which, we think, must extend at least until the facts about the patient's financial ability have been or should have been ascertained.[4] The obligation of the city to reimburse the

___

[4] The city may recover expenses paid by it from the patient "and the cities, towns, and persons responsible." See the *Symmes* case, 292 Mass. 162, 164. See also G. L. c. 117, § 5 (as amended through St. 1958, c. 395). Also the city, after its board of public welfare has notice of the hospitalization, may make other reasonable provision (consistent with the patient's health) for his care or may bring to the hospital's attention the circumstance that the patient (or some other person responsible, see *Templeton* v. *Winchendon*, 138 Mass. 109, 110–111) is able and bound to pay promptly for the hospitalization. See *Treasurer & Recr. Gen.* v. *Boston*, 320 Mass. 166, 168 (parents of child treated had "financial ability to pay").

hospital would exist beyond a reasonable initial period only for such further period as to which it might reasonably appear to the hospital (a) that a sufficient medical necessity continued and (b) that the patient could not reasonably avail himself of assets or resources to pay the charges promptly.

The order of the Appellate Division dismissing the report is reversed. The finding for the defendant is vacated. The case is to stand for trial in the Municipal Court of the City of Boston.

*So ordered.*