PARKVIEW MEMORIAL HOSPITAL, INC.; KIMBROUGH v.
COUNTY DEPARTMENT OF PUBLIC WELFARE OF
DEKALB COUNTY ET AL.

[Nos. 19,677 and 19,677 a. Filed June 19, 1963.]

Thomas D. Logan, Rothberg, Gallmeyer & Strutz, both of Fort Wayne, for appellants.

*Edwin K. Steers*, Attorney General, *Gordon R. Medli-cott*, Deputy Attorney General and *Edgar W. Atkinson*, of Auburn, for appellees.

PFAFF, J.—Two separate appeals are consolidated herein. Separate actions were filed in the trial court, one by appellant, Parkview Memorial Hospital, Inc., and the other by Robert F. Kimbrough, M. D., the appellees being defendants in both cases. Both actions were brought to recover the reasonable value of services furnished one Kendall Curtis, and were consolidated for trial.

Most of the relevant facts were stipulated. Curtis is a resident of DeKalb County, Indiana, and sometime prior to December 9, 1957 was employed as a salesman for a Fort Wayne employer and was discharged. On December 9, 1957 while operating an automobile and while drinking, he was involved in an accident on a highway in Allen County, Indiana, seriously injuring himself and other persons. He required immediate medical assistance and hospitalization and was taken to appellant hospital and received medical care from appellant doctor.

The parties stipulated the reasonable value of the services provided by appellants and the balance is still due.

It was stipulated that at the time of the accident Kendall Curtis had an insurance policy which provided for the payment of a portion of his hospital and medical expenses. Payments of $1,295.00 by the insurance company exhausted the rights under the policy, and there was no additional liability under the insurance contract.

Evidence was introduced on behalf of appellants that a member of a law firm and special investigators

found that Curtis had no real property, that his personal property consisted of normal household furnishings and a 1954 automobile which was subject to a bank mortgage; that he was behind in his rent on the apartment were he lived; that he had no collision or liability insurance on his automobile.

The overseer of the poor was notified a day or two after the accident. He made an initial investigation and referred the matter to the County Department of Public Welfare of Allen County, which later turned the investigation filed over to appellee County Department of Public Welfare of DeKalb County.

Appellants made claim and repeated demands upon the County Department of Public Welfare of DeKalb County for the balance due on the hospital and medical bills.

The Department of Public Welfare of the State of Indiana gave an opinion to the effect that Curtis was not an "indigent" person. Thereupon the County Department of Public Welfare of DeKalb County denied payment of the claims for the following reasons:

"State Department of Public Welfare has given an opinion that any case in which there are any resources, the case is not 'indigent.' Chapter 267, Acts of 1957, under which this application was made and investigated, states in part 'In the event any indigent person is injured on any public highway.' Insurance benefits in the amount of $1,295 were paid in this case. Board therefore denies this application as not eligible under Chapter 267, Acts of 1957."

The following section was added to the Acts of 1935, ch. 116, p. 432, commonly known as the Poor Relief Act, by the Acts of 1957, ch. 267, §1, p. 631:

"The above entitled act is amended by adding a new and additional section thereto to be num-

bered section 5a and to read as follows: Sec. 5a. In the event any indigent person is injured on any public highway in any township of this State, the overseer of the poor in such township shall immediately report such matter to the Department of Public Welfare of the county in which such township is located, which Department shall promptly provide medical and hospital care for such indigent person. The cost of any such medical and hospital care so furnished shall be borne by the county of the legal residence of the indigent, or if he has no legal residence in any county of this state by the county in which such township is located; and shall be paid out of any money appropriated to the county welfare department."

While this statute was later amended, it read as above at all times pertinent hereto. §52-148a, Burns' 1951 Replacement.

The principal question involved here is whether or not under the facts Kendall Curtis was an "indigent person" within the meaning of the statute when he was injured. It is not strongly contended that Curtis would have been considered other than an "indigent person" had it not been for the insurance policy.

Part of appellants' argument deals with certain duties of the overseer of the poor, but his duties are not in issue here.

The parties stipulated:

"12. That the State Department of Public Welfare of Indiana is the responsible agency for the supervision over the duties of the County Department of Public Welfare, and their responsibilities, pursuant to Burns' Indiana Statutes 52-1104, and the Department of Public Welfare of DeKalb County, Indiana is bound to abide by the opinion and instructions of the Department of Public Welfare of the State of Indiana, under the provisions of the Welfare Act of 1936 as Amended."

However the present action is not brought pursuant to the Welfare Act of 1936, as amended but pursuant to the Poor Relief Act of 1935, as amended. As appellees state, the opinion or correspondence of the Department of Public Welfare of the State of Indiana, "had no binding effect upon the DeKalb County Welfare Department whatsoever."

No basis for any liability of or judgment against the Department of Public Welfare of the State of Indiana is presented by appellant's brief, and the trial court properly entered judgment in its favor.

There remains to be considered whether Kendall Curtis was an "Indigent Person" in view of the fact that at the time of his injury he had an insurance policy which was sufficient to cover a part of the required hospital and medical services.

At the time of the accident and injury involved here, the legislature had not defined the term "indigent person." Therefore this Court must determine as best it can its meaning in accordance with legislative intent. 26 I. L. E., Statutes, §113, p. 314; 2 Sutherland, Statutory Construction, 3d Ed., §4814, p. 358.

Various definitions of "indigent" appear in the opinions of the Attorney General for 1957, p. 272; 21 Words and Phrases, p. 335 *et seq.*; 41 Am. Jur., Poor and Poor Laws, §4, p. 683; 48 C. J., Paupers, §1, p. 428; 70 C. J. S., Paupers, §1, p. 5. See also annotation in 98 A. L. R. 870. It is "A term which in its common acceptation is used with direct and single reference to financial ability and resources." 42 C. J. S., Indigent, §336, p. 1363.

Under an early statute this Court said in *The Board of Commissioners of Warren County* v. *Osburn* (1892), 4 Ind. App. 590, 31 N. E. 541:

> "The phrase, 'poor person,' as used in the statute, has a settled legal signification, and is applied to those who may rightfully claim alms from the public bounty. Its meaning is the same as that of 'pauper' or 'indigent person.' "

Cases from other jurisdictions involving indigent persons have arisen under different statutory provisions than the ones involved here, and it would serve no useful purpose to discuss such cases in detail. However, we may say that the later cases do not generally require that a person be absolutely devoid of resources in order to be considered indigent.

The Poor Relief Act of 1935 provides in §52-176, Burns' 1951 Replacement, that:

> "The purpose of this act is to provide necessary and prompt relief to the citizens and residents of this state, and this act shall be liberally construed in order that its purposes may be accomplished as equitably and expeditiously as possible. . . ."

Liberally construing the statute in accordance with the mandate of the legislature, we do not understand the legislative intent to be that in order for a person to be an "indigent person" within the meaning thereof there must be a complete lack of resources. Rather, we believe the legislative intent was to include those persons who did not have resources sufficient to pay for all the medical and hospital services required by the injury. We do not believe the legislature intended that persons injured on highways and who were wholly devoid of resources should have the cost of medical care and hospitaliza-

tion paid from money appropriated to a county welfare department while those who had some resources, no matter how inadequate, should not.

The judgments as to the Department of Public Welfare of the State of Indiana are affirmed. The judgments, insofar as they pertain to the County Department of Public Welfare of DeKalb County, Indiana, are reversed with instructions to sustain appellants' motions for new trial as to the County Department of Public Welfare of DeKalb County, Indiana.

Mote, C. J., Carson, P. J., Clements, Cooper, Hunter, Kelley and Ryan, JJ., concur.

NOTE.—Reported in 191 N. E. 2d 116.