MONTANA DEACONESS HOSPITAL, a nonprofit corporation, Plaintiff and Appellant, v. LEWIS AND CLARK COUNTY, a political subdivision of the State of Montana and Lewis and Clark County Welfare Board, Defendants and Respondents.

No. 11129.
Submitted February 8, 1967.   Decided March 13, 1967.
425 P.2d 316.

Church, Harris, Johnson & Williams, Cresap S. McCracken (argued), Great Falls, for appellant.

Thomas Hanrahan, County Atty., Thomas F. Dowling, Deputy County Atty., Helena, William F. Crowley (argued), Missoula, for respondent.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This is an appeal from the findings of fact and conclusion of law of the District Court of the First Judicial District, County of Lewis and Clark, State of Montana, that Mary Lou Desonia was not a resident of Lewis and Clark County at the time of furnishing emergency surgical services to her and that she was not a medically indigent person.

Mary Lou Desonia, a single woman, 26 years old, was admitted to the Montana Deaconess Hospital in Great Falls, Montana, on May 22, 1964. She was suffering from acute appendicitis. Surgery was performed and Miss Desonia remained in the hospital until May 29, 1964. During her stay, the hospital investigated her financial circumstances and determined

that she was apparently without funds. The hospital authorities immediately contacted the Cascade County Welfare Department. An application for assistance was made by Miss Desonia, at the hospital's request, although it was not her desire to apply. She said she was willing to and desired to pay the hospital bill herself, and she admits her liability to make payment, although it can fairly be said that she never paid, made any effort to pay, nor does she have any apparent ability to pay.

Cascade County denied any responsibility for Miss Desonia and referred the Deaconess Hospital to Lewis and Clark County. The Lewis and Clark County Welfare Department investigated and recommended denial of the claim. The denial was based on two grounds: (1) There was insufficient evidence that Miss Desonia was a resident of Lewis and Clark County; and (2) Miss Desonia was fully employable.

After Miss Desonia's release from the hospital, several monthly bills were mailed to her, and on one occasion, a phone call was made to her by the hospital.

On June 24, 1964, the Deaconess Hospital filed a claim with the Lewis and Clark County Commissioners for Miss Desonia's bill. The claim was denied. This law suit was then initiated. From an adverse ruling in the lower court, the Montana Deaconess Hospital now appeals. Four issues are involved in this matter. (1) residency; (2) real party in interest; (3) indigency; and (4) must an appeal be taken to the State Welfare Board before instituting a court action?

The first issue is whether or not Miss Desonia's residence in Lewis and Clark County was proven. This action came to the district court as a review of the Board of County Commissioners' denial of the hospital's claim for payment. However, at the hearing in the district court the appellant produced Mary Lou Desonia, who in spite of the finding of the district court that she was not a resident of Lewis and Clark County, testified that she was born and raised in the County

and had only lived in Cascade County a month prior to her operation. This was the only evidence as to residency produced by either side and the court clearly erred in its finding that she was not a resident of Lewis and Clark County.

The second issue concerns whether the hospital can prosecute the claim as a real party in interest.

■ The district court held that the hospital in this instance had standing as a real party to sue in this case. Respondent, relying on Rule 14, M.R.Civ.P., requests that this holding be reviewed. This court sustained the lower court's ruling, finding that the hospital in these emergency medical care cases can become a real party in interest and bring an action.

This court considered the question of emergency hospitalization to an indigent in the case of State ex rel. Montana Hospital Association, Inc. v. Pitch, 140 Mont. 349, 372 P.2d 90. In that case the Hospital Assn., the assignors of a claim of one of their member hospitals, brought mandamus proceeding against the Board of County Commissioners of the alleged home county of the indigent. This court upheld the denial of mandamus by the district court on the basis that a plain, speedy and adequate remedy was available at law under section 16-1808, R.C.M.1947. In so doing we most certainly recognized the hospital as a real party in interest entitled to assign its claim.

■ Under our statutes hospitals may collect from counties for welfare cases either by contracting with the county to handle such cases or for services rendered to one who has been unable to provide such necessities for himself. Here there is no contract between appellant hospital and Lewis and Clark County. Rather the hospital having determined that Miss Desonia was unable to pay for her hospitalization bases its claim to her rights under the Welfare Act. The hospital incorrectly assumed that it had the power to determine whether or not Miss Desonia was "unable to provide for herself."

The legislature has failed to provide for "emergency medi-

cal or hospital care" outside the confines of a county other than via the contract method, however, section 71-308, R.C.M. 1947, provides in part: "Medical aid and hospitalization for persons unable to provide such necessities for themselves are hereby declared to be the legal and financial duty and responsibility of the board of county commissioners, payable from the county poor fund. * * *"

Clearly, so long as the provisions as to notice, etc., are followed it was contemplated by the legislature that emergency situations would be provided for administratively by the board of commissioners either within or beyond the county lines. To hold otherwise would not be in harmony with our statutes. If hospitals were to reject admission of emergency cases until the legal settlement is established, or until one who is responsible accepts the obligation to care for such indigent, much harm could result.

Recognizing that the hospital can become the real party in interest, it is incumbent upon it to establish, as would an indigent, that it is entitled to collect.

Here the hospital, once having decided to prosecute its claim, assumed the burden at the trial of proof of residency and proof of indigency.

The third issue is whether or not proof of medical indigency was submitted proving Mary Lou Desonia eligible for medical or hospital assistance under the public welfare and relief laws.

We approach this question assuming that an employable adult must be presumed not to be an indigent within the meaning of our statutes. While medical indigency has never been defined by this court, for our purposes here we look to the language of section 71-308, R.C.M.1947, and Article X, § 5, of our Montana Constitution, that indigent persons entitled to medical aid and hospitalization are those persons unable to provide such necessities for themselves by reason of age, infirmity or misfortune.

Recognizing that the primary obligation to pay for

such service rests upon the individual who benefits from them and that the legal obligation upon the county does not mature into a liability until it has been shown that the individual is an indigent person, we must recognize that some agency must be charged with the duty of establishing such indigency. Our legislature has given that duty to the welfare department and the county commissioners and has set up the procedural steps to be followed in carrying out the Welfare Act. See sections 71-223 and 71-306, R.C.M.1947.

Under our statutes the Welfare Department is charged with the duty of investigation and upon such investigation to make recommendation to the Board of County Commissioners. In this case as previously pointed out no creditable investigation was made either of the residency claim of Miss Desonia or whether or not she was an indigent. Therefore, when the matter was presented to the Commissioners for a decision they had inadequate information upon which to base their decision.

It is the duty of the Board of County Commissioners under our law to serve as a fact finding body and to make decisions based upon the claims presented to them. In view of the right to appeal, set forth in our statutes, the Board should make findings of fact in each case so that these findings can be reviewed by the state Welfare Board should an appeal be made.

Answering issue number four, it should be noted that if a claimant is denied assistance under the public welfare and relief laws, they may appeal to the county board and to the state board and submit proof of the validity of the claim.

As to the question of medical indigency as it pertains to the emergency operation here in question, the first hearing before the Board of County Commissioners, received no creditable information from the Welfare Department on whether or not Miss Desonia was either a resident or an indigent. Rather they had to make their decision on whether or not she was employable, and if so she ipso facto was not

eligible for welfare as an indigent. However, at the hearing in the district court enough evidence was produced concerning whether she was a medically indigent person, so that the district court ruled that in its opinion she was not a medically indigent person.

However, this finding is in our opinion contrary both to the testimony introduced and to the spirit of the legislative intent of the welfare statutes of this state. The fact was that Miss Desonia never has supported herself and apparently never would. Just what the social, moral, mental, or physical reasons for her inabilities to be a productive citizen are do not appear; but the fact remains she was at the time of admission to the hospital an indigent in every legal and social sense.

What we have said heretofore indicates that the burden of proof of indigency, residence and the other factors in these cases rests both upon the claimant (the hospital in this case) and upon the Welfare Department, to the extent that full facts be disclosed. In the light of what we consider inadequate consideration by all parties here, we are not called upon to place the burden of proof with particularity.

We therefore reverse the decision of the district court and return the case with the directions that judgment be entered for appellant hospital.

MR. CHIEF JUSTICE JAMES T. HARRISON and DISTRICT JUDGE W. W. LESSLEY, sitting for MR. JUSTICE DOYLE, and MR. JUSTICES ADAIR and CASTLES, concur.