157 N.J. Super. 85 (1978)
384 A.2d 552
COUNTY OF HUDSON, PLAINTIFF-RESPONDENT,
v.
ALFREDO AND LUSIA (LUISA) HERNANDEZ, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued January 31, 1978.
Decided February 15, 1978.
*86 Before Judges HALPERN, LARNER and KING.
Theodore A. Gardner argued the cause for appellants (Hudson County Legal Services, attorneys; Theodore A. Gardner, of counsel and on the brief).
William Surdobel, Assistant County Counsel, argued the cause for respondent (Harold J. Ruvoldt, Hudson County Counsel, attorney; Walter J. Greenhalgh, of counsel and on the brief).
The opinion of the court was delivered by HALPERN, P.J.A.D.
The County of Hudson obtained a judgment against defendants in the Hudson County District Court for $818 for services rendered in November 1973 to Mrs. Hernandez at the Margaret Hague Maternity Hospital.
Defendants appeal, contending they were entitled to free care because they were indigent when the services were rendered. When we rendered our decision on November 10, 1976 we did not decide whether defendants were indigent when the hospital services were rendered. Instead, we held they were obligated to pay because they did not assert their indigency when the services were rendered.
The Supreme Court granted certification on February 1, 1977. 73 N.J. 60 (1977). On December 6, 1977 it reversed and held that "the issues concerning the effect of the failure *87 to assert indigency at the time of hospital admission and waiver or estoppel with respect to a later claim of indigency are not relevant to the basic issue of indigency and the entitlement of an indigent person to hospital care without charge under N.J.S.A. 30:9-26 * * *." 75 N.J. 543. It remanded the matter to us to decide whether the trial judge had erred in determining that defendants were not indigent at the time the hospital services were rendered.
The Margaret Hague Maternity Hospital was owned and operated by the County of Hudson when defendant Mrs. Hernandez gave birth to a child there. Ownership of the hospital has since been transferred to the City of Jersey City. At the time in question it was the only county maternity hospital in the State controlled by N.J.S.A. 30:9-26, which provides in relevant part:
A maternity hospital established under section 30:9-24 of this Title shall be used exclusively for the care and treatment of persons in the county requiring the care and attention for which such hospital was intended whether such persons be indigent or non-indigent. * * *
As we noted in our earlier opinion, it is acknowledged by the litigants that the act necessarily implies that the hospital is not authorized to impose charges for services to indigents.
Unfortunately, unlike statutes dealing with other types of hospitals and a variety of services to indigents under varying situations, this statute does not define indigency or give any indication of how to determine who is entitled to free care. Left with no specific guidelines we are compelled to construe the term "indigent" having in mind the legislative intent sought to be accomplished.
Reference to out-of-state cases dealing with similar statutes is helpful in disposing of the issue before us. In Montana Deaconess Hosp. v. Lewis and Clark Cty., 149 Mont. 206, 425 P.2d 316, 318 (1967), the Montana Supreme Court interpreted the term "medical indigency" as describing "those persons unable to provide such necessities [as *88 medical care] for themselves by reason of age, infirmity or misfortune." In St. Patrick Hosp. v. Powell Cty., 156 Mont. 153, 477 P.2d 340 (1970), the same court said:
In construing our welfare statutes, we do not understand the legislative intent to be that in order for a person to be an "indigent person" within the meaning thereof to receive medical assistance there must be a total lack of resources. Rather, we believe the legislative intent was to include those persons who do not have the present or future hope of resources sufficient to pay for all the medical and hospital services required in emergency instances. [477 P.2d 343]
The Appellate Court of Indiana, in Parkview Memorial Hosp. v. DeKalb Cty., 134 Ind. App. 689, 191 N.E.2d 116 (1963), defined the term "indigent person" to include "those persons who did not have resources sufficient to pay for all the medical and hospital services required by the injury." 191 N.E.2d at 119.
The Supreme Court of Vermont, in Destitute of Bennington Cty. v. Henry W. Putnam Memorial Hosp., 125 Vt. 289, 215 A.2d 134 (1965), rejected the argument that "indigent" was synonymous with "destitute."
The Supreme Judicial Court of Massachusetts had occasion to interpret the words "pauper" and "a person in need of public assistance" in Massachusetts General Hosp. v. City of Revere, 346 Mass. 217, 191 N.E.2d 120 (1963). It said that the terms included "a patient who appears to be unable to avail himself of his assets, if any, sufficiently rapidly to meet necessary hospital expenses in ordinary course." 191 N.E.2d at 123-124.
The California District Court of Appeals provided another definition. In Madison v. City and County of San Francisco, 106 Cal. App.2d 232, 234 P.2d 995, 1002 (1951), hearing den. 106 Cal. App.2d 232, 236 P.2d 141 (Sup. Ct. 1951), that court held that the expression "unable to pay for her necessary care" used in the California statute meant "a person who has insufficient means to pay for his maintenance *89 in a private hospital after providing for those who legally claim his support."
It is our view that the approach to the problem by the California courts squares with the intent of our Legislature in adopting N.J.S.A. 30:9-24 and 30:9-26. And to avoid any misunderstanding, we hold that a person need not be impoverished or devoid of all assets to qualify as an indigent under these statutes. See Annotation, "Determination of Indigency of Accused Entitling him to Appointment of Counsel," 51 A.L.R.3d 1108 (1973); Ventantonio, "Equal Justice Under the Law," 7 Seton Hall L. Rev. 233 (1976).
At the time Mrs. Hernandez was admitted to the hospital, her husband earned about $80 a week net. From this amount he had to pay $125 a month for rent, as well as all bills for food, gas, electricity, transportation and other necessities. Defendants had no savings or any other assets. Regardless of what test to determine indigency is used, it is crystal clear that these defendants did not have sufficient resources to pay for the care furnished for Mrs. Hernandez' stay at the hospital. These defendants, therefore, were "indigent" within the meaning of N.J.S.A. 30:9-24 and 30: 9-26.
The judgment below is reversed.