PAULINE WILLIAMS *v.* BERNARD SHAPIRO, WELFARE COMMISSIONER

CIRCUIT COURT                                    SIXTH CIRCUIT
FILE No. CV 6-6611-27628

Memorandum filed April 27, 1967

*John Rose, Jr.,* of New Haven, for the plaintiff.

*Harold M. Mulvey,* attorney general, and *Richard E. Rapuano,* assistant attorney general, for the defendant.

WISE, J. The facts are not in dispute. The plaintiff was the supervising relative for Willie Edward Williams, her husband, and Jimmie Williams, her son, recipients of assistance under the aid to dependent children program. Willie E. Williams had two life insurance policies with the cash surrender value of $183.33 and $206. Jimmie Williams also had two life insurance policies with a cash surrender value of $59.10 and $104.91. The combined cash surrender value of the four policies amounted to $553.34. Plaintiff received assistance under the aid to dependent children program from January 1, 1960, to June 30, 1966, when the award was discontinued because the assistance plan members had insurance policies with a cash surrender value in excess of $250 and refused to adjust the insurance policies so that the cash surrender value would not exceed $250. The award was discontinued by virtue of the rules and regulations of the state welfare commissioner[1] and the application of the commissioner's policy.[2]

The plaintiff requested a fair hearing as provided for in § 17-2a of the General Statutes. Thereafter, a fair hearing was held and the discontinuance of the award by the commissioner was upheld. That decision gave rise to the present appeal under § 17-2b, which provides in part: "The court, upon

[1] Rules and regulations of the state welfare commissioner, § 17-2-3 (c), read as follows: "Personal property under aid to dependent children. Ownership of personal property is limited to two hundred fifty dollars. This limit applies to all personal property except reasonable home furnishings, reasonable personal jewelry, trailers, houseboats or cottages on leased or borrowed land which are occupied as a home by the applicant or beneficiary, and automobiles required for essential transportation, plus the total cash value of all insurance on the life of any person for whom assistance is sought or granted."

[2] The pertinent policy of the welfare commissioner in 1 Manual, c. 11, index 204, p. 2, § D, reads as follows: "Members of the assistance group shall not own a combined total of more than $250 in personal property including cash value in life insurance."

such appeal, shall determine whether the commissioner has acted illegally or so arbitrarily and unreasonably as to abuse his discretion . . . ."

The plaintiff contends that the commissioner was in error in terminating plaintiff's award because the limit set by § 17-2-3 (c) of the regulations on the total cash surrender value of life insurance policies held by beneficiaries of the aid to dependent children program is substantially lower than that for recipients in other categories of the welfare program and, therefore, that limitation operates as a denial of equal protection in contravention of the fourteenth amendment to the United States constitution; that the arbitrary discrimination between the aid to dependent children program and other categories of assistance has no substantial relation to the objectives of the welfare program, and therefore the practice acts as a denial of property of the beneficiaries without due process as required by the fourteenth amendment to the United States constitution and article first, § 10, of the Connecticut constitution; and that the limit set by § 17-2-3 (c) of the regulations on the total cash surrender value of insurance policies held by beneficiaries of the program is unreasonably low and accordingly acts to deprive the beneficiaries of property without due process of law in contravention of the fourteenth amendment to the United States constitution and article first, § 10, of the Connecticut constitution. The court is not in accord with these contentions and holds that there is no merit to them.

It is fundamental that when a question of constitutionality is raised, courts must approach it with great caution, examine it with infinite care, and sustain the legislation unless its invalidity is clear and beyond a reasonable doubt. *Snyder* v.

*Newtown,* 147 Conn. 374, 390; *Edwards* v. *Hartford,* 145 Conn. 141, 145. Even with more hesitation, this court does not feel justified in passing upon a question of constitutionality and declaring legislation void. This determination should be left to and passed upon by a court of higher jurisdiction.

The plaintiff concedes, as indeed she must, that there is no constitutional or common-law duty on the part of the state or any governmental unit to support poor and destitute persons. The whole matter of relief for the needy is purely statutory. *Division of Aid for the Aged* v. *Hogan,* 143 Ohio St. 186. But where a statute makes it a duty of the state or local authorities to provide for indigent persons, that duty is mandatory and must be strictly complied with. Although Connecticut has recognized the necessity for a program relating to aid to dependent children by enacting chapter 302, part 2, of the General Statutes, it nevertheless provided in § 17-100, a part of that chapter, as follows: "[N]o beneficiary or other person shall have any vested right to any such aid." The import of this is that the plaintiff has no "property" in welfare assistance that is subject to the protection of the fourteenth amendment to the United States constitution and of the Connecticut constitution. Payment of relief funds are grants and gratuities rather than legal obligations. *Smith* v. *Board of Commissioners,* 259 F. Sup. 423; see *McCarthy* v. *Hinman,* 35 Conn. 538, 540.

The plaintiff concedes that the state can set limits as to the value of assets held by recipients of its welfare programs but contends that those limits can be so arbitrarily low as to deprive a recipient of his property, resulting in a denial of due process. This again presupposes that the recipient of aid has a vested property right in such aid. The court is not in accord, as hereinbefore stated.

Further, the fact that the limit set by § 17-2-3 (c) of the regulations on the total cash surrender value of life insurance policies held by recipients of aid to dependent children is lower than that for recipients in other categories of the welfare program is immaterial. The fourteenth amendment does not purport to prevent a state from adjusting its legislation to differences in situations and to that end to make a justifiable classification. It merely requires that the classification shall be based on a real and substantial difference having a rational relation to the subject of the particular legislation. The classification need not, however, be accurate, scientific, logical or harmonious, so long as it is not arbitrary and will accomplish the legislative design. The judiciary will not interfere with the classification when made unless it is clearly unreasonable. Since there is no legal obligation upon the state, or any governmental unit, in the absence of legislative action, to support its poor, it follows necessarily that a large degree of discretion rests upon the state when it elects to furnish relief. *People ex rel. Heydenreich* v. *Lyons,* 374 Ill. 557. Whatever the reasons may be for the legislature to provide for differences in classifications, such reasons for doing so are its own. Its legislative enactments cannot be successfully challenged in the courts unless they are clearly beyond the grant of legislative power conferred by the constitution or are so arbitrary and unreasonable as to constitute an abuse of the powers conferred. *Moran* v. *Bens,* 144 Conn. 27, 31; see *State* v. *Shuster,* 145 Conn. 554, 556; *Lyman* v. *Adorno,* 133 Conn. 511, 521.

It cannot be assumed that the legislative enactments were adopted arbitrarily or without good reason to further some legitimate policy of the state. What were the special reasons, motives or policies of the legislature for adopting the questioned classi-

fication and provisions we do not know with certainty, nor is it important that we should. A state legislature need not explicitly declare its purpose. Therefore, we cannot say that the fact that the limit set on the total cash surrender value of life insurance policies held by recipients of aid to dependent children is lower than that for recipients in other categories of the welfare program was not founded upon a reasonable distinction or difference in state policy or that no state of facts reasonably can be conceived to sustain it. For those reasons, it cannot be said that the questioned classification and provisions were arbitrary and denied the plaintiff the equal protection of the laws within the meaning of the fourteenth amendment. *Allied Stores of Ohio, Inc.* v. *Bowers,* 358 U.S. 522, 527-28; *Southwestern Oil Co.* v. *Texas,* 217 U.S. 114, 126. It is not for the court to pass upon the economic advantages or disadvantages resulting to the recipient of aid to dependent children because he has to adjust the cash surrender value of the life insurance policies so that such value will not exceed $250, while in other categories of the welfare program such values could exceed $250. It is not for the court to say whether such a requirement is wise. *Schwartz* v. *Kelly,* 140 Conn. 176, 179; see *State* v. *Griffiths,* 152 Conn. 48, 55, citing many authorities upholding the constitutionality of a number of our welfare statutes.

It is fundamental that no one will be heard to question the constitutionality of a statute unless he is adversely affected by it. *State* v. *Hurliman,* 143 Conn. 502, 506. The plaintiff has no personal private property in the benefits received from the aid to dependent children program. Only members of a class whose constitutional rights are endangered by a statute may ask to have it declared unconstitutional. *Connecticut Light & Power Co.* v.

*Southbury,* 95 Conn. 242, 246. The plaintiff is not injured by the operation of the questioned section and cannot be said to be deprived by it either of constitutional rights or of property. *Coyle* v. *Housing Authority,* 151 Conn. 421, 424; *Liebeskind* v. *Waterbury,* 142 Conn. 155, 159; *Windsor* v. *Whitney,* 95 Conn. 357, 367.

It is to be noted that the plaintiff challenges the section under which she seeks assistance. It would appear that this is another reason why she cannot raise the constitutional question—"it does not now lie in her mouth to say that the very statute to which she has made her appeal for redress is void because unconstitutional." *Rindge* v. *Holbrook,* 111 Conn. 72, 77.

Finally, did the commissioner act illegally or so arbitrarily and unreasonably as to abuse his discretion, as provided for in General Statutes § 17-2b? It is too well settled to require any citation of cases that in appeals from the action of administrative agencies the court can go no further than to decide whether the action of the agency was illegal, arbitrary or an abuse of discretion. Whether the court agrees or disagrees with the commissioner's conclusion is not controlling. The court has no authority to substitute its own judgment for that of the commissioner. The court finds that the commissioner did not act "illegally or so arbitrarily and unreasonably as to abuse his discretion."

Judgment may enter dismissing this appeal.