No. 13578

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

COUNTY OF BLAINE, STATE OF MONTANA,

       Petitioner and Appellant,

   -vs-

EDWIN S. MOORE and ST. JAMES COMMUNITY
HOSPITAL,

       Respondent and Respondent.

Appeal from:  District Court of the Twelfth Judicial District,
             Honorable B. W. Thomas, Judge presiding.

Counsel of Record:

    For Appellant:

        Solem and MacKenzie, Chinook, Montana
        Stuart C. MacKenzie argued, Chinook, Montana

    For Respondent:

        Corette, Smith and Dean, Butte, Montana
        Gerald R. Allen argued, Butte, Montana

                   Submitted:  June 1, 1977

                     Decided: SEP 14 1977

Filed: SEP 14 1977

_Thomas J. Kearney_
                    Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

The County of Blaine, State of Montana, appeals from the final judgment and order of the district court, Blaine County. The district court affirmed the administrative decisions of the Department of Social and Rehabilitation Services (SRS) which ordered Blaine County, as the county of financial responsibility, to pay approximately $30,000 in medical debts incurred by Edwin S. Moore and his wife.

Edwin S. Moore and his wife, Marlene Moore, were married March 9, 1969. Prior to moving to Montana in the early fall, 1969, Mr. Moore was employed in a teaching position in Oklahoma. Moore is of Indian descent from the Creek Tribe in Oklahoma. Marlene Moore is an enrolled member of the Fort Belknap Indian Reservation. Upon their marriage the Moores took up residence on the ranch of Marlene's parents located at Lodgepole, Montana, in Blaine County.

In February, 1970, Moores moved to Denver, Colorado, where he was employed as an iron worker on construction jobs until December, 1972. Marlene returned to her parents' ranch on December 24, 1972 and Moore joined her the following day. The Moores resided on the ranch at Lodgepole until September, 1973 when they moved to Havre in Hill County. Both attended Northern Montana College and resided in a married student housing unit. The Moores returned to the ranch at Lodgepole on weekends and over Christmas vacation. In April, 1974, Moores moved out of the married student housing unit and transported all their personal property back to the ranch at Lodgepole. Neither of the Moores attended classes during spring quarter, but during the summer, 1974, Moore commuted from the ranch at Lodgepole to Northern Montana College.

In September, 1974, Moore obtained employment as an Indian counsellor with the Anaconda Public School System. The Moores moved to Anaconda, Deer Lodge County. Moore was assisted in obtain-

ing this employment by the Employment Assistance Office of the Bureau of Indian Affairs, Fort Belknap Indian Reservation. The Bureau of Indian Affairs paid the Moores' moving expenses and provided an initial subsistance allowance. On August 2, 1974, when the Moores filed the Application for Economic Assistance with the Bureau of Indian Affairs, Marlene also filled out a statement of medical history stating that she was pregnant.

On September 27, 1974, Marlene was admitted to Community Hospital in Anaconda where she gave birth to a baby girl. She was released from Community Hospital on October 3, 1974. Complications from the pregnancy required that she be readmitted to Community Hospital on October 7, 1974. She was transferred, under emergency conditions, to St. James Community Hospital, Butte, Montana, Silver Bow County, on October 23, 1974. Marlene was not released from St. James Community Hospital until December 28, 1974. In the meantime, Moore had been suspended from his employment with the Anaconda Public School System. The Moores returned to Lodgepole and have resided there since her release.

The Moores have incurred medical expenses of approximately $30,000 and are without funds to pay these medical debts. Marlene was insured under the Blue Cross of Montana health care plan provided by Moore's employer. However, benefits for obstetrical care or complications of pregnancy are available only if child birth occurs after nine months of continuous family membership. The Moores failed to satisfy the waiting period.

On October 8, 1974, Donald Martin, Service Unit Director of the Fort Belknap Public Health Service, denied Indian Health Service coverage for maternity care to Mrs. Moore on the ground "our contract medical care funds are limited to only those persons who are permanent residents of this service unit delivery system area."

- 3 -

The Moores subsequently filed in Deer Lodge County an Application for General Assistance County Medical Benefits. The welfare department, Deer Lodge County, on the basis of the application submitted, determined that Blaine County was the place of Moores' residence. Deer Lodge County forwarded the application to Blaine County by letter dated December 10, 1974. Blaine County denied Moores' application on March 7, 1975, on the grounds the Public Health Service was the resource responsible for satisfying the medical debts of the Moores and Mr. Moore's income exceeded Blaine County's standard for determining eligibility for general assistance. On April 14, 1975, Moore requested a fair hearing before a hearings officer of the Department of Social and Rehabilitation Services, State of Montana, because of Blaine County's denial of county medical assistance. Additionally, on April 15, 1975, St. James Community Hospital requested a fair hearing for Moore.

On June 19, 1975, a hearing on the matter was held in Blaine County, Chinook, Montana. Moores were not present at the hearing. Blaine County objected to SRS granting a fair hearing to St. James Community Hospital on the grounds St. James Community Hospital lacked standing to request a fair hearing and the hospital failed to obtain written authorization to act on behalf of the Moores. Blaine County sought a continuance of the fair hearing on the ground the Moores failed to satisfy residency requirements, a condition precedent for submitting to Blaine County an Application for General Assistance County Medical Benefits. The hearings officer denied Blaine County's motions and proceeded with the hearing while allowing Blaine County to introduce evidence regarding the issue of Moores' residence.

On July 1, 1975, the SRS hearings officer issued Fair Hearing Decision No. 163, which concluded as a matter of law:

- 4 -

> "Mr. and Mrs. Moore must be classified as
> indigent persons entitled to medical aid and
> hospitalization, who were unable to provide
> such necessities for themselves because of a
> catastrophic misfortune resulting in a medical
> debt of approximately $30,000.00. Section 71-
> 308, R.C.M. 1947, indicates that 'Medical aid
> and hospitalization for persons unable to provide
> such necessities for themselves are hereby
> declared to be the legal and financial duty and
> responsibility of the Board of County Commissioners.'
> In this particular case, Hill County becomes the
> county of financial responsibility * * *."

The hearings officer ordered:

> "That Blaine County be upheld in their denial of
> General Assistance County Medical to Edwin and
> Marlene Moore since the county of financial
> responsibility is Hill County and that the Hill
> County Board of Commissioners be directed to pay
> Mr. and Mrs. Moore's medical claims resulting in
> approximately $30,000.00."

The hearings officer based his order on the finding that the Moores, while residing in the married student housing unit at Northern Montana College in Hill County, were residents of Hill County pursuant to the provisions of section 71-302.2, R.C.M. 1947.

On July 9, 1975, St. James Community Hospital appealed from Fair Hearing Decision No. 163 so far as it related to the finding that Moore was a resident of Hill County for purposes of determining eligibility to receive aid. Hill County also filed an appeal claiming Hill County was not notified of the fair hearing, as required by section 82-4209, R.C.M. 1947; Hill County was denied due process of law; and Moore was a resident of Blaine County.

On August 29, 1975, the Board of Social and Rehabilitation Appeals issued its decision holding:

> "1. St. James Community Hospital is properly a
> party to the action;

> "2. That Mr. Moore does not now have, nor is it
> reasonably expected that he will have in the fore-
> seeable future, resources which will enable him to
> pay the medical debts relating to his wife's
> illness;

- 5 -

"3. That a separate hearing be held to determine residence and the county of financial responsibility and that all parties involved be present and be given an opportunity to be heard. Based upon the information presented at the hearing, the Hearings Officer shall determine the county of residence."

On October 2, 1975, Blaine and Hill Counties petitioned the district court, Blaine County, for review of the findings of the hearings officer in Fair Hearing Decision No. 163 and review of the administrative order and decision of the Board of Social and Rehabilitation Appeals. St. James Community Hospital moved to dismiss the petition on the ground Blaine and Hill Counties had failed to exhaust all administrative remedies available to them. On November 10, 1975, the district court issued an order dismissing Blaine and Hill Counties' petition for review of administrative proceedings on the grounds a final decision on all issues before the administrative agency had not been rendered and the appeal of the petitioners was premature.

A rehearing of Fair Hearing Decision No. 163 was held in Blaine County, Chinook, Montana on November 18, 1975. As requested by the Board of Social and Rehabilitation Appeals in their decision of August 29, 1975, the rehearing was limited to a determination of the Moores' county of residence and the county of financial responsibility. Moores were present at the rehearing. St. James Community Hospital presented a written authorization, signed by Moores, allowing St. James Community Hospital to act in behalf of the Moores, in connection with the rehearing. The authorization was dated November 18, 1975.

On November 20, 1975, the SRS hearings officer issued rehearing of Fair Decision No. 163 which concluded as a matter of law:

"In conclusion, Mr. and Mrs. Moore are residents of Blaine County. When returning to Montana from Colorado, they became new residents of the State beginning December 24, 1972. From this date on, they considered Blaine County as their residence

until actually moving to Anaconda, Montana, in
September 1974. However, the Moores, for
welfare purposes, would remain residents of
Blaine County, even though residing in Deer
Lodge County, for up to one (1) year but, in
this case, they chose to return to Blaine
County in December 1974."

The hearings officer ordered:

"That the original order of July 1, 1975,
upholding Blaine County's action to deny General
Assistance County Medical and directing Hill County
to pay Mr. and Mrs. Moore's medical claims be hereby
amended and it is hereto ordered that Blaine County
is the county of financial responsibility based
on evidence of residency provided by Mr. and Mrs.
Moore at the rehearing held on November 18, 1975.
Blaine County is, therefore, the county of financial
responsibility and is directed to pay Mr. and Mrs.
Moore's medical debts incurred during the time in
question of approximately $30,000.00."

Blaine County appealed the rehearing of Fair Hearing
Decision No. 163 to the Board of Social and Rehabilitation Appeals.
The Board issued its decision on January 28, 1976, affirming the
revised order of the hearings officer.

On February 27, 1976, Blaine County filed a petition in
the district court, Blaine County, seeking judicial review of the
SRS administrative proceedings, pursuant to section 82-4217, R.C.M.
1947. The district court, after hearing oral arguments, review-
ing and considering the administrative proceedings and briefs of
counsel, affirmed the administrative decisions of SRS, having
failed to find a basis for reversal or modification of those ad-
ministrative decisions under the provisions of section 82-4217,
R.C.M. 1947. Judgment was accordingly entered for respondents
on July 13, 1976. Blaine County appeals to this Court from the
final order and judgment of the district court, Blaine County.

Blaine County raises the following issues for review:

1. Whether the hearings officer erred when he denied
Blaine County's motions for dismissal or continuance in Fair
Hearing No. 163 when the claimants (Moores) failed to appear?

2. Whether the hearings officer and the Board of Social

- 7 -

and Rehabilitation Appeals erred when they concluded St. James Community Hospital was a proper party which had standing to pursue the Moores' claim for county medical benefits and had standing to appeal Fair Hearing Decision No. 163?

3. Whether the hearings officer erred in failing to find the Indian Health Service the resource responsible for satisfying the medical debts of the Moores?

4. Whether the Board of Social and Rehabilitation Appeals erred in limiting the scope of rehearing of Fair Hearing Decision No. 163 to a determination of the Moores' county of residence?

5. Whether the hearings officer, Board of Social and Rehabilitation Appeals and district court erred in finding Blaine County the resource financially responsible for paying the medical debts of the Moores?

The first two issues raised by Blaine County challenge St. James Community Hospital's standing as a proper party to pursue the Moores' claim for county medical benefits. The departmental rules of the Montana Department of Social and Rehabilitation Service provide:

> "46-2.2(2)-P240 CONTESTED CASES, REPRESENTATION
> (1) A claimant may be represented by legal counsel, or by a relative, friend, or other spokesman, or he may represent himself. A departmental employee may not represent a claimant.

> "(2) In the discretion of the Fair Hearing Officer, a hospital, nursing home, physician or other vendor may act in a representational capacity for the purposes of requesting a fair hearing and acting as spokesman for a claimant where a hardship exists which impedes the obtainability of a written authorization from the claimant to act in such a capacity."

Although St. James Community Hospital obtained written authorization from the Moores in time for the rehearing, the hospital lacked such written authorization at the time of the

initial fair hearing. Two months lapsed between the date St. James Community Hospital petitioned for a fair hearing and the date of the fair hearing. The hospital contends it made good faith efforts to contact Moore in Lodgepole, but were unsuccessful in obtaining a response. The good faith efforts of the hospital are supported by evidence that the Blaine County Welfare Department was also unsuccessful in contacting Moore. Once the hospital did obtain written authorization on November 18, 1975, Moore ratified all previous actions of the hospital in the Moores' behalf and authorized the hospital to further pursue the Moores' claim.

Blaine County contends the absence of the Moores at the fair hearing is fatal to any force or effect given the hearings officer's findings of fact and conclusions of law and decision. In support of its argument Blaine County cites the SRS departmental rules, MAC 46-2.2(2)-P2040(6), which provides:

> "(6) A hearing may otherwise be considered as concluded when the claimant or authorized representative withdraws his request for a fair hearing in writing or fails to attend a properly noticed hearing without good cause. The hearing officer shall inform the claimant by letter of the date his claim shall become a closed issue as a result of said failure to attend. A second hearing may be scheduled at the discretion of the hearing officer for good cause. A hearing may also be concluded by stipulation, consent order, or settlement."

We believe this departmental rule must be read in conjunction with MAC 46-2.2(2)-P240(2) which places in the discretion of the fair hearings officer the determination of whether a hospital may act in a representational capacity for purposes of requesting a fair hearing and acting as spokesman for the claimant. In the instant case the hearings officer concluded there was justification for the hospital's failing to obtain written authorization from the claimant in time for the fair hearing. We fail to find substantial evidence which would indicate the hearings officer abused

- 9 -

his discretion in arriving at this determination.

This Court held in Montana Deaconess Hospital v. Lewis and Clark County, 149 Mont. 206, 210, 425 P.2d 316, a hospital has standing, as a real party in interest, to bring a cause of action to collect county welfare medical benefits for emergency medical care rendered by the hospital for an individual eligible to receive county welfare medical assistance. In Montana Deaconess Hospital v. Lewis and Clark County we stated:

> " * * * If hospitals were to reject admission of emergency cases until the legal settlement is established, or until one who is responsible accepts the obligation to care for such indigent, much harm could result."

Similarly, much harm could result if hospitals, under the facts of the present case, could be denied a vehicle for recovering the costs expended for emergency medical care merely because a claimant fails to appear at a fair hearing. We conclude the hearings officer in the instant case did not abuse his discretion when he determined the hospital was a proper party which had standing to request a fair hearing and pursue the Moores' claim for county welfare medical assistance in the Moores' absence. Nor did the Board of Social and Rehabilitation Appeals err when it determined the hospital had standing to appeal Fair Hearing Decision No. 163.

The third issue raised by Blaine County challenges the hearings officer's failure to find the Indian Health Service the resource responsible for satisfying the medical debts of the Moores. Blaine County contends the Moores should be denied county welfare assistance since the Indian Health Service is responsible for providing the Moores medical care. Blaine County refers to specific provisions of the Bureau of Indian Affairs manual, which purportedly provides maternity care benefits up to eleven months after relocation when the claimant receives relocation assistance

from the Bureau of Indian Affairs, and the existence of past

and pending federal cases which address the issue of the Indian

Health Service "responsibility to provide medical care to 'off-

reservation Indians.'"

MAC 46-2.10(18)-S11490 provides:

"46-2.10(18)-S11490  THIRD PARTY LIABILITY
(1) Third party liability shall be treated as
a current resource when found to exist, except
that payment will not be withheld in behalf of
an eligible individual because of liability of
a third party when such liability or the amount
thereof cannot be currently established or is
not currently available to pay the individual's
medical expense.

"(a) Third party includes an individual, insti-
tution, corporation, public or private agency
who is or may be liable to pay all or part of
the medical cost of injury, disease or disability
of an applicant or recipient of medical assistance.

"(b) Referrals shall be made to the Legal Unit,
Department of Social and Rehabilitation Services,
P. O. Box 1723, Helena, Montana 59601, for exam-
ination.  The Legal Unit shall make referrals to
the Department of Revenue for recovery." (Emphasis
added.)

The evidence clearly establishes that the Indian Health

Service refuses to give medical assistance to the Moores.  42

CFR 36.12 indicates there may be regulatory justification for

the Indian Health Service's denial of medical assistance to the

Moores:

"§36.12  Persons to whom services will be provided.

"(a) In general.  (1) Services will be made avail-
able, as medically indicated, to persons of Indian
descent belonging to the Indian community served
by the local facilities and program, and non-Indian
wives of such persons.

"(2) Generally, an individual may be regarded as
within the scope of the Indian health and medical
service program if he is regarded as an Indian by
the community in which he lives as evidenced by
such factors as tribal membership, enrollment,
residence on tax-exempt land, ownership of restricted
property, active participation in tribal affairs,
or other relevant factors in keeping with general
Bureau of Indian Affairs practices in the juris-
diction.

- 11 -

"(b) Doubtful cases. (1) In case of doubt as
to whether an individual applying for care is
within the scope of the program, the Medical
Officer in Charge shall obtain from the appropriate
Bureau of Indian Affairs officials in the jurisdic-
tion information pertinent to his determination of
the individual's continuing relationship to the
Indian population group served by the local program.

"(2) If the applicant's condition is such that
immediate care and treatment are necessary, ser-
vices shall be provided pending identification as
an Indian beneficiary.

"(c) Priorities when funds, facilities, or personnel
are insufficient to provide the indicated volume of
services. Priorities for care and treatment, as
among individuals who are within the scope of the
program, will be determined on the basis of relative
medical need and access to other arrangements for
obtaining the necessary care." (Emphasis added.)

In any event, we fail to find merit in Blaine County's argument

that the Moores must litigate a potential right to federal resources

prior to seeking county welfare medical assistance. Upon being

denied federal assistance, the Moores elected to apply for county

welfare medical assistance and under the circumstances they are

entitled to such assistance.

The fourth and fifth issues raised by Blaine County con-

cern the problem of determining the Moore's residence as it applied

to the finding that Blaine County was the county of financial

responsibility for purposes of paying the medical debts of the

Moores. It should be noted that Blaine County does not contest

SRS's finding that the Moores are indigent persons entitled to

county welfare medical assistance. See State ex rel. Hendrickson

v. Gallatin County, 165 Mont. 135, 526 P.2d 354; Saint Patrick

Hospital v. Powell County, 156 Mont. 153, 477 P.2d 340. The

difficulty arises when one attempts to determine the county of

financial responsibility under Montana's statutory scheme.

Section 71-308, R.C.M. 1947, in pertinent part provides:

"Medical aid and hospitalization. (1) Medical aid
and hospitalization for nonresidents within the
county and county residents unable to provide
such necessities for themselves are the legal and

financial duty and responsibility of the board of
county commissioners, except as otherwise provided
in other parts of this act, payable from the
county poor fund."

MAC 46-2.10(38)-S101970 provides:

"46-2.10(38)-S101970  COUNTY RESIDENCY  (1)
For determination of applicant's county residency
requirements, reference is made to R.C.M. 1947,
Section 71-302.2."

Finally, section 71-302.2, R.C.M. 1947, sets forth the criteria
to be utilized in determining the county of financial responsi-
bility on the basis of the claimant's residency:

"Residency requirements.  Any person otherwise
qualified who makes his home in the state of
Montana with the intent to become a resident shall
be eligible for general relief.  Upon the filing
of his application in the county of residence,
his assistance shall be paid entirely from state
funds until he has resided for one (1) continuous
year in the state of Montana, at which time he
shall become a financial responsibility of the
county in which he resides at the expiration of
the one (1) year period.  A person who leaves the
state of Montana with the intent to reside in
another state, and later returns to reside in the
state of Montana, shall be deemed a new resident
for the purposes of this act.  If a recipient moves
from his original county of residence to reside
in another county, he shall continue to be a
financial responsibility of the original county
of residence for one (1) year from the date of his
change of residence.  If during this one (1) year
period, the individual resides in several counties,
he shall become a financial responsibility of the
county in which he resides at the expiration of
the one (1) year period.  County medical assistance
under section 71-308 shall not be entitled to be
paid from state funds."

The plain and clear meaning of the language in section
71-302.2, R.C.M. 1947, indicates the county of financial responsi-
bility is that county in which the claimant resides at the end
of one year continuous residence in Montana.  The statutory lang-
uage would infer that a person, otherwise qualified, who makes
his permanent home in the state of Montana with the intent to be-
come a resident, may migrate from county to county within Montana
and, at the end of the one year period, the county where the per-
son is found is the county of financial responsibility for the

- 13 -

purpose of paying county welfare medical benefits. Furthermore, if the new resident continues his migration after the one year period, the "original county of residence" continues to be financially responsible for county welfare benefits for one year from the date of the new residents change of county residence·

The effect of section 71-302.2, R.C.M. 1947, and the complications arising out of the present fact situation are best demonstrated by a chart depicting the Moores' migration patterns.

| Date Initiating Residence | Date Terminating Residence | Situs of Residence | Approximate period of Residence |
|---|---|---|---|
| Dec. 24, 1972 | Sept. 23, 1973 | Lodgepole, Blaine County | 9 months |
| Sept. 24, 1973 | April 23, 1974 | Havre, Hill County | 7 months |
| April 24, 1974 | Sept. ?, 1974 | Lodgepole, Blaine County | 5 months |
| Sept. ?, 1974 | Dec. 28, 1974 | Anaconda, Deer Lodge County | 3 months |
| Dec. 29, 1974 | present | Lodgepole, Blaine County | |

At the end of the Moores' year of residence in Montana, subsequent to returning from Colorado, the Moores were residing at Havre, in Hill County, attending Northern Montana College and living in the married couples housing unit. Under a strict interpretation of section 71-302.2, one would conclude that Hill County is the county of financial responsibility. However, a presumption arises that the county wherein a college or university lies is not the resident county of the attendant students. Generally, students travel from the residence of their parents, attending college only during the academic year, and return to their parents' residence on weekends, holidays and summer breaks. For this reason, it is customary to look to the parents' residence in order to determine the residence of the student. Otherwise, the county in which the college lies would be unduly burdened

with providing for the social welfare of students.

As oftentimes occurs, the facts of the present case do not readily fall within the guidelines of the presumption. The Moores are not of the tender age often associated with college students. Furthermore, there is an absence of the parental ties often associated with the student leaving his parents' home to attend college. Therefore, we must look closer to determine the county having the most significant contacts with the Moores.

The Moores resided in Blaine County for nine months prior to their attending Northern Montana College. During the Moore's stay in Hill County, they returned to Blaine County on weekends and holidays to aid Mrs. Moore's parents by helping with the work on their ranch. Upon leaving Hill County, the Moores returned to Blaine County, and resided on the ranch while continuing to help with the work. Moore then commuted to Northern Montana College where he continued his course work during the summer, 1974. Moore testified that he at all times considered Lodgepole to be the situs of his permanent residence.

The facts clearly indicate that Blaine County was the county having the most significant contacts with the Moores. Under such an analyses Blaine County is the county of financial responsibility for purposes of providing county medical welfare assistance to the Moores. We conclude the hearings officer and Board of Social and Rehabilitation Appeals did not err in limiting the scope of rehearing of Fair Hearing Decision No. 163 to a determination of the Moores' county of residence since that was the sole issue being legitimately contested at the time. Nor did the hearings officer, Board of Social and Rehabilitation Appeals and district court err in finding Blaine County the county financially responsible for providing county welfare medical assistance to the Moores.

The order and judgment of the district court, affirming the administrative decisions of SRS are affirmed, consistent with this opinion.

_____
                Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

- 16 -