No. 79-30

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

_____

MELANIE MICHELS,

Petitioner and Appellant,

vs.

DEPARTMENT OF SOCIAL AND
REHABILITATION SERVICES OF
THE STATE OF MONTANA; CASCADE
COUNTY, a political subdivision
of the State of Montana; and
the CASCADE COUNTY WELFARE BOARD,

Respondents and Respondents.

_____

Appeal from:  District Court of the Fourth Judicial District,
              In and For the County of Cascade.
              Honorable Joel G. Roth, Judge presiding.

Counsel of Record:

    For Appellant:

        Richard Ganulin, Great Falls, Montana

    For Respondents:

        David A. Scott, Helena, Montana
        J. Fred Bourdeau, County Attorney, Great Falls, Montana
        Alexander and Baucus, Great Falls, Montana

_____

Submitted on briefs: March 24, 1980

Decided: MAR 26 1980

Filed:  MAR 26 1980

_Thomas J. Kearney_
                    Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

The appellant sought a judicial review of an adverse decision of the State Board of Social and Rehabilitation Services Appeals concerning the denial of medical assistance. The District Court affirmed the administrative decision, and appellant brings this appeal.

Appellant is a twenty year old female. She was born in Great Falls, Montana, and has lived her entire life there. In the spring of 1978 she left Great Falls to attend Western Montana College in Dillon, Montana. During the period of time she attended school, she returned to her home nearly every weekend and considered Great Falls her permanent address. The testimony indicates that she intends to make Great Falls her home when she finishes school.

In the summer of 1978 appellant found employment with the Gallatin National Forest on a summer job that was to assist her in her education, and she indicated that she intended to return to college that fall.

On August 5, 1978, appellant was involved in a head-on automobile collision. The driver of the other vehicle was killed, and appellant was seriously injured. She was taken to the emergency room of Bozeman Deaconess Hospital, was in the intensive care unit for several days and remained in the hospital two weeks before being released to return to her home in Great Falls. As a result of the accident, she was incapacitated three months with the following medical and physical problems: compound fracture of her left leg, broken chin, broken arm, and four missing teeth. She was unable to go out on her own until approximately three months after the accident. Total medical expenses resulting from this accident were $6,500.

Neither appellant nor her parents had ever received any welfare assistance prior to the accident. Her family consisted of seven members and the income of the family was approximately $9,000. Following the accident, a relative recommended that appellant's mother apply for disability benefits from the social security administration to help defray medical bills. Such an application was made but denied two months after it had been made.

No one at the hospital or no medical personnel contacted appellant's family concerning the availability of county medical benefits. They learned that county medical benefits might be available in their notice of denial from the social security administration some two months after applying. Appellant then applied for medical benefits. Her application was denied since she applied later than five days after receiving the medical care.

Three issues are presented for our consideration:

1. Is the five-day rule valid?

2. Was the finding of a lack of good cause for extending the five-day limit proper?

3. Was appellant a resident of Cascade County for the purposes of county medical insurance?

Section 53-3-103, MCA, provides broad coverage of medical assistance for those persons who, finding themselves under calamitous circumstances because of medical costs, look to the county to obtain coverage. That section provides for medical aid and hospitalization for indigents:

> "(1) Except as provided in other parts of this title, medical aid and hospitalization for county residents and nonresidents within the county unable to provide these necessities for themselves are the legal and financial responsibility of the county commissioners and are payable from the county poor fund. . ."

Counties of this state have the obligation to provide medical assistance to indigents under this section. See, Flathead Health Center v. Cty. of Flathead (1979), ____ Mont. ____, 598 P.2d 1111, 36 St.Rep. 1465, 1469; Wheatland County v. Bleeker (1978), 175 Mont. 478, 575 P.2d 48, 35 St.Rep. 166, 169; Saint Patrick Hospital v. Powell County (1970), 156 Mont. 153, 477 P.2d 340.

It should be noted that in Saint Patrick Hospital, this Court said that under the welfare statute, an indigent person ". . . include[s] those persons who do not have the present or future hope of resources sufficient to pay for all the medical and hospital services required in emergency instances." 477 P.2d at 343.

In Saint Patrick Hospital this Court also held that ". . . the State Welfare Department has the right to set up standards so long as they are reasonable. . ." 477 P.2d at 343. In interpreting the above regulations, the Department adopted an administrative regulation, ARM §46-2.10(38)-S101950, which provides:

> "GENERAL (1) Medically Needy persons may apply to county welfare departments in the county in which they are residing for medical aid and hospitalization care.
>
> "(a) Application by a recipient for payment of medical services rendered to him shall be effective retroactively in the minimum amount of five days prior to date of notification to the county of the intent of the recipient to apply for payment of said medical services.
>
> "(i) Retroactivity beyond the above five-day limit shall be allowed at the discretion of the county welfare board upon good cause shown for failure to meet said five-day limit.
>
> "(2) 'Medically Needy Persons' for the purposes of this Sub-Chapter 38 of the Economic Assistance Division are those persons who are eligible for General Relief as provided in R.C.M. 1947, Title 71, Chapter 3, and meet the requirements as set forth in this Sub-Chapter."

As previously noted, it is well established in this jurisdiction that indigents have the right to county medical assistance. Appellant here applied for such assistance two months after being released from the hospital. She was denied assistance simply because she applied later than five days after receiving medical services. At no time was her indigency an issue in the case.

It has been held that where a statute makes it the duty of the state or local authorities to provide for indigent persons, that duty is mandatory and must be strictly complied with. See, Wayne Township v. Lutheran Hospital (1974), 160 Ind.App. 427, 312 N.E.2d 120; State ex rel. Arteaga v. Silverman (1972), 56 Wis.2d 110, 201 N.W.2d 538; Mooney v. Pickett (1971), 94 Cal.Rptr. 279, 483 P.2d 1231; Lawson v. Shuart (1971), 323 N.Y.S.2d 488; Williams v. Shapiro (1967), 4 Conn.Cir. 449, 234 A.2d 376.

We find that the provision of a five-day limit for the application for funds in cases such as this for medical insurance are invalid, for unless regulations effectively effectuate the purpose of the statute, they are invalid. See, Desert Environmental Con. Ass'n v. Public Util. Com'n (1973), 106 Cal.Rptr. 31, 505 P.2d 223. Whatever force and effect the regulation has must derive from the statute under which it is enacted, and a regulation in conflict with that statute is without effect. See, 2 Am.Jur.2d Administrative Law §289, and Bell v. Dept. of Licensing (1979), ___ Mont. ____, 594 P.2d 331, 36 St.Rep. 880. "It is axiomatic that a statute cannot be changed by administrative regulation." State ex rel. Swart v. Casne (1977), 172 Mont. 302, 308, 564 P.2d 983.

Clearly in this case the administrative regulation providing that the application be made within five days of the provision of medical services changes the statute which does not require an indigent person to apply for benefits in any particular time. The spirit and the purpose for public assistance statutes is to provide for those citizens who are in "need." One must ask himself, in what way is this ideal furthered by distinguishing between those who apply for the benefits within five days of receiving medical services and those who apply after five days? The very injustice is apparent in such a case as here, where appellant was without knowledge of the county medical program, always acted in good faith, was for two weeks in a hospital away from the county of her home and only applied after two months of hospital and home care. On its face, the five-day rule here is patently unreasonable.

While the District Court ruled that the five-day rule did not engraft "an additional requirement on the statutory provision, but rather is a reasonable and necessary exercise of the agency's rule making power to establish a more specific guideline for the benefit of both the agency and the applicant," we find that in so ruling it erred and that appellant was deprived of medical benefits.

The next issue raised is whether or not appellant failed to show good cause for waiving the five-day rule. Again, ARM §46-2.10(38)-S101950(1)(a)(i) provides:

> "Retroactivity beyond the above five-day limit shall be allowed at the discretion of the county welfare board upon good cause shown for failure to meet said five-day limit."

The hearings officer, the board and the District Court all found that appellant did not give good cause for failure to

meet the five-day limit, noting that her parents or she could have telephoned or that the medical vendor or some other person could have made application for the aid within the five-day period. Appellant argues that as a matter of law she has shown good cause for failure to apply for the medical benefits within five days of receiving the services. Neither she nor her family had ever received any welfare benefits in the past. They had no knowledge of the county medical program until two months after appellant was released from the hospital in a county several hundred miles away from her home.

What the hearings officer, the board of county commissioners, and the District Court failed to take into consideration in the fact situation here is that appellant was involved in an accident where one person was killed; was in an intensive care situation for a matter of days; remained in the hospital away from her home for over two weeks; and was unable to go out of her home for nearly three months. Under these facts, this Court can and has reversed administrative decisions that are arbitrary or capricious or constitute abuse of discretion on the part of the administrative authority. Here the administrative decision was arbitrary and capricious. No reason was provided for the agency's decision that appellant did not have good cause for applying more than five days after receiving the medical services.

The Cascade County welfare department is obliged to assist indigents in paying for medical services. In light of this we find that appellant has made a good faith and reasonably diligent effort to get this assistance from the county and that it was an abuse of discretion for the welfare department to determine that she did not have good

-7-

cause for applying more than five days after receiving the medical assistance.

The third issue presented for our consideration is whether appellant is a resident of Cascade County for the purposes of county medical assistance. This Court in a recent case, County of Blaine v. Moore (1977), 174 Mont. 114, 568 P.2d 1216, 34 St.Rep. 1051, considered the question of the residency of college students as to receiving public assistance. There the Court noted:

> "At the end of the Moores' year of residence in Montana, subsequent to returning from Colorado, the Moores were residing at Havre, in Hill County, attending Northern Montana College and living in the married couples housing unit. Under a strict interpretation of section 71-302.2 [R.C.M. 1947], one would conclude that Hill County is the county of financial responsibility. However, a presumption arises that the county wherein a college or university lies is not the resident county of the attendant students. Generally, students travel from the residence of their parents, attending college only during the academic year, and return to their parents' residence on weekends, holidays and summer breaks. For this reason, it is customary to look to the parents' residence in order to determine the residence of the student. Otherwise, the county in which the college lies would be unduly burdened with providing for the social welfare of students." 568 P.2d at 1224.

Here appellant was born and raised in Cascade County. Her parents and family live in Cascade County. She gives Cascade County as her permanent address and intends to reside there after she finishes school. The fact that she accepted temporary summer employment in Gallatin County does not change her place of residence. Under the rule established in County of Blaine v. Moore, supra, appellant is found to be a resident of Cascade County for purposes of county medical assistance.

The judgment of the District Court is reversed.

_____
                    Justice

-8-

We concur:

_Frank I. Haswell_
Chief Justice

_Gene B. Daly_

_Daniel J. Shea_

_John C. Sheehy_
Justices