**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0747-24

H.S.,

    Petitioner-Appellant,

v.

OCEAN COUNTY BOARD
OF SOCIAL SERVICES,

    Respondent-Respondent.

_____

        Submitted January 26, 2026 – Decided February 18, 2026

        Before Judges Natali and Bergman.

        On appeal from the New Jersey Department of Human Services, Division of Medical Assistance and Health Services.

        H.S., self-represented appellant.

        Jennifer Davenport, Acting Attorney General, attorney for respondent (Sookie Bae-Park, Assistant Attorney General, of counsel; Laura N. Morson, Deputy Attorney General, on the brief).

PER CURIAM

Petitioner H.S. appeals from a September 26, 2024 final agency decision of the New Jersey Division of Medical Assistance and Health Services (Division) which adopted an Administrative Law Judge's (ALJ) decision finding H.S. ineligible for Aged, Blind, Disabled Medicaid benefits.  We affirm.

I.

On February 20, 2024, H.S. submitted a New Jersey FamilyCare (NJFC) application to the Ocean County Board of Social Services (OCBSS) under the Aged, Blind, Disabled (ABD) Medicaid program.  OCBSS reevaluated H.S. to determine if she qualified for benefits under that program, as detailed in N.J.A.C. 10:71 and N.J.A.C. 10:72.  In accordance with that reevaluation, OCBSS sent H.S. a Request for Information seeking, among other information, documentation confirming her housing and Social Security Retirement Income (SSRI), which H.S. was obligated to provide.  See 42 C.F.R. § 435.952(a) and N.J.A.C. 10:71-2.2(e).

Less than a month later, on March 6, 2024, according to OCBSS, H.S. provided OCBSS a partial response but did not (1) verify her living arrangement by submitting a copy of her lease nor did she (2) confirm she received SSRI or attest she was ineligible for those benefits.  In fact, OCBSS determined that the documentation H.S. actually provided confirmed she was eligible for SSRI, but

never applied for those benefits which it maintained is a condition precedent for participation in the ABD program. See N.J.A.C. 10:72-3.8.

OCBSS accordingly denied her application on March 21, 2024 and confirmed that her NJFC benefits would be terminated as of May 1, 2024. H.S. responded by requesting a fair hearing and the matter was forwarded to the Office of Administrative Law (OAL).

ALJ Tricia M. Caliguire conducted that hearing in which Kayla Riley, a Human Services Specialist, testified on behalf of OBCSS. Riley stated that OCBSS received certain verifications from H.S. but that they were incomplete, rendering her unable to process H.S.'s application or determine her financial eligibility. Riley specifically explained that H.S.'s documentation confirmed, however, that she was eligible for SSRI benefits but never filed to obtain those benefits "as required by [N.J.A.C. 10:72-3.8]."

Riley also testified that, although OCBSS received verification of H.S.'s residency, it was unable to determine her actual shelter expenses. Riley explained that OBCSS did not request further information as to those expenses because it was clear based on H.S.'s other responses that she had not applied for SSRI benefits, despite her clear eligibility for those benefits. As a result, H.S.

was ineligible for the ABD Medicaid program which rendered further investigation of the outstanding issues unnecessary.

J.S., H.S.'s husband, also testified. He maintained that H.S. provided all the requested documentation. He confirmed, however, she provided only a letter from her landlord confirming she rented his property since 2018 and did not provide additional information regarding her other shelter expenses. Notably, H.S. also provided a benefits statement that proved she had "earned enough credits to qualify for [SSRI] retirement benefits." Neither J.S. nor H.S. offered any evidence to dispute OCBSS's finding that H.S. failed to apply for SSRI benefits.

After considering the documentary and testimonial evidence, the ALJ issued an Initial Amended Decision on September 19, 2024, and determined H.S. was ineligible for ABD Medicaid benefits pursuant to N.J.A.C. 10:71-2.2(e). ALJ Caliguire concluded H.S. failed to provide all required verifications and documentation, and further determined H.S. was eligible for SSRI but elected not to apply, "preferring to wait until age seventy to ensure a greater monthly payment." On September 26, 2024, the Division adopted the initial decision of the ALJ. This appeal followed.

A-0747-24

Before us, H.S. argues the Division improperly denied her application. She contends, under N.J.A.C. 10:72-3.8, she has demonstrated good cause to warrant "not obtaining [her Social Security] retirement benefits, as waiting a mere [two] years . . . will boost [her] monthly income by over 19% for life." She asserts the "financial planning" to wait and receive "over 19% increase per month" constitutes such good cause. In the event she has not demonstrated good cause, she argues she has already functionally fulfilled her obligations, under N.J.A.C. 10:72-3.8, because she remains eligible for her Social Security benefits. She asserts there is no gain in "forcing one to accept the funds . . . especially if they have a good reason to not accept their benefits." We disagree with all of her arguments.

II.

On judicial review of an agency decision, "[o]ur function is to determine whether the administrative action was arbitrary, capricious or unreasonable." Burris v. Police Dep't, Twp. of W. Orange, 338 N.J. Super. 493, 496 (App. Div. 2001) (citing Henry v. Rahway State Prison, 81 N.J. 571, 580 (1980)). The agency decision must be supported by "'substantial evidence'" in the record as a whole. Circus Liquors, Inc. v. Middletown Twp., 199 N.J. 1, 10 (2009) (quoting Mazza v. Bd. of Trs., 143 N.J. 22, 25 (1995)).

A presumption of validity attaches to the agency's decision. See Brady v. Bd. of Rev., 152 N.J. 197, 210 (1997). This is so because "in administrative law, the overarching informative principle guiding appellate review requires that courts defer to the specialized or technical expertise of the agency charged with administration of a regulatory system." In re Virtua-West Jersey Hosp. Voorhees for a Certificate of Need, 194 N.J. 413, 422 (2008) (citation omitted). But we are "in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue." In re Carter, 191 N.J. 474, 483 (2007) (quoting Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973)). Finally, the party challenging the validity of an agency's decision has the burden of showing that it was arbitrary, capricious, or unreasonable. J.B. v. N.J. State Parole Bd., 444 N.J. Super. 115, 149 (App. Div. 2016) (citing In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006)).

Our review is therefore guided by three inquiries: "(l) whether the agency's decision conforms with relevant law; (2) whether the agency's decision is supported by substantial credible evidence in the record; and (3) whether, in applying the law to the facts, the administrative agency clearly erred in reaching its conclusion." Twp. Pharm. v. Div. of Med. Assistance & Health Servs., 432

6

N.J. Super. 273, 283–84 (App. Div. 2013) (citing In re Stallworth, 208 N.J. 182, 194 (2011)).

"Medicaid is a federally-created, state-implemented program that provides 'medical assistance to the poor at the expense of the public.'" Matter of Estate of Brown, 448 N.J. Super. 252, 256 (App. Div. 2017) (quoting Estate of DeMartino v. Div. of Med. Assistance & Health Servs., 373 N.J. Super. 210, 217 (App. Div. 2004)); see also 42 U.S.C. § 1396–1. To receive funding, a State must comply with all federal statutes and regulations, including eligibility requirements set by the federal government. Harris v. McRae, 448 U.S. 297, 301 (1980); Zahner v. Sec'y Pa. Dep't of Human Servs., 802 F.3d 497, 512 (3d Cir. 2015). Participating states "must provide coverage to the 'categorically needy,' which includes . . . persons whom Congress considered especially deserving of public assistance because of family circumstances, age, or disability." L.M. v. Div. of Med. Assistance & Health Servs., 140 N.J. 480, 485 (1995) (citing 42 U.S.C. § 1396a(a)(10)(A)(i)).

Medicaid is intended to be a resource of last resort and is reserved for those who have demonstrated a financial or medical need for assistance. See N.E. v. Div. of Med. Assistance & Health Servs., 399 N.J. Super. 566, 572 (App. Div. 2008). "[T]o be financially eligible, the applicant

A-0747-24

must meet both income and resource standards." <u>Matter of Est. of Brown</u>, 448 N.J. Super. 252, 257 (App. Div. 2017); <u>see also</u> N.J.A.C. 10:71-3.15; N.J.A.C. 10:71-1.2(a). Pursuant to the New Jersey Medical Assistance and Health Services Act, N.J.S.A. 30:4D-1 to -19.5, the Division is responsible for administering the Medicaid program in New Jersey and is charged with doing so in a fiscally respectable manner to ensure funds are available for all eligible participants. <u>See</u> <u>Dougherty v. Dep't of Hum. Servs., Div. of Med. Assistance & Health Servs.</u>, 91 N.J. 1, 4-5 (1982); <u>Estate of DeMartino v. Div. of Med. Assistance & Health Servs.</u>, 373 N.J. Super. 210, 217-19 (App. Div. 2004).

Through its regulations, the Division establishes "policy and procedures for the application process." N.J.A.C. 10:71-2.2(b). In turn, County Welfare Agencies (CWA), like OCBSS, evaluate eligibility. N.J.S.A. 30:4D-7(a); N.J.A.C. 10:71-1.5, -2.2(c). A CWA exercises direct responsibility in the application process to:

> 1. Inform applicants about the purpose and eligibility requirements for Medicaid Only, inform them of their rights and responsibilities under its provisions and inform applicants of their right to a fair hearing;
>
> 2. Receive applications;
>
> 3. Assist applicants in exploring their eligibility for assistance;

8

4. Make known the appropriate resources and services, and, if necessary, assist in their use; and

5. Assure the prompt and accurate submission of eligibility data to the Medicaid status files for eligible persons and prompt notification to ineligible persons of the reason(s) for their ineligibility.

[N.J.A.C. 10:71-2.2(c)(1)-(5).]

A CWA must verify the equity value of resources through "credible sources," and "shall evaluate the applicant's past circumstances and present living standards . . . to ascertain the existence of resources that may not have been reported." N.J.A.C. 10:71-4.1(d)(3). "If the applicant's resource statements are questionable or there is reason to believe the identification of resources is incomplete, the CWA shall verify the applicant's resource statements through one or more third parties." Ibid.

The CWA may also deny eligibility for Medicaid if the applicant fails to provide timely verifying information or "verifications." N.J.A.C. 10:71-2.2(e); N.J.A.C. 10:71-3.1.

Additionally, N.J.A.C. 10:72-3.8 states:

As a condition of eligibility for the [Aged, Blind, Disabled] Medicaid program, applicants and beneficiaries are required to take all necessary steps to obtain any annuities, pensions, retirement and disability benefits to which they are entitled, unless they can show good cause for not doing so. . . .

9

[Including] [a]nnuities, pensions, retirement and disability benefits include, but are not limited to, veterans' compensation and pensions, Social Security benefits, and unemployment compensation.

The Division argues good cause, undefined in N.J.A.C. 10:72-3.8, is "generally understood by OCBSS to mean a circumstance beyond the individual's control that prevents him or her from taking the necessary steps to obtain the income or benefits they [are] entitled to." It provides examples of what would constitute good cause including "administrative delays, incapacity, or other legitimate barriers." It further contends the intent of N.J.A.C. 10:72-3.8 "is to ensure individuals pursue all available income sources as a condition of Medicaid eligibility, absent a true inability to do so."

We agree with the Division's reasonable interpretation of "good cause," as the term is used in N.J.A.C. 10:72-3.8, and note its interpretation appears consistent with other authorities and jurisdictions. Black's Law Dictionary (12th ed. 2024) defines "good cause" as "[a] legally sufficient reason. Good cause is often the burden placed on a litigant (usu[ally] by court rule or order) to show why a request should be granted or an action excused."

Further, in New York, by way of example, "[a]n applicant for . . . public assistance is exempt from complying with any requirement concerning eligibility for public assistance if the applicant . . . establishes that good cause

10

exists for failing to comply with the requirement."  N.Y.C.R.R. tit. 18 §

351.26(a); see also Onondaga Ctr. for Rehab. & Healthcare v. New York State

Dep't of Health, 180 N.Y.S.3d 415, 417 (2022).  Under this statute, good cause

for failing to comply with an eligibility requirement exists when:

> (1) the applicant or recipient has a physical or mental condition which prevents compliance;
>
> (2) the applicant's or recipient's failure to comply is directly attributable to social services district error; or
>
> (3) other extenuating circumstances, beyond the control of the applicant or recipient, exists which prevent the applicant or recipient from being reasonably expected to comply with an eligibility requirement.
>
> [Ibid.]

See also In re Landry, 198 Vt. 565, 569 (2015) (noting "nothing in the record"

supported good cause to justify the petitioner's failure to provide appropriate

verifications to support her eligibility for Medicaid); Hopkins v. Dep't of Hum.

Servs., 802 A.2d 999, 1004 (2002) (citing  42 C.F.R. § 435.608(a)) (concluding

the petitioner's denial of Medicaid benefits "based upon the application of a

mathematical formula" did not constitute good cause to warrant relaxation of the

eligibility requirements); Casper v. Itasca Cnty. Hum. Servs., 531 N.W.2d 506

(Minn. Ct. App. 1995) (citing Minn. Stat. § 256.045, subd. 3.) (holding the

applicant's medical condition constituted good cause to excuse his slightly

11

delayed application seeking reimbursement under the county's public assistance medical care); Michels v. Dep't of Soc. & Rehab. Servs., 187 Mont. 173, 179 (1980) (citing M.C.A. § 53-3-103) (concluding the fact that petitioner "was in an intensive care situation for a matter of days; remained in the hospital away from her home for over two weeks; and was unable to go out of her home for nearly three months" constituted good cause to relax the filing deadline for her to apply for indigent county medical assistance).

New Jersey case law in other contexts outside Medicaid reflects a similar interpretation of what constitutes good cause. See Minsavage for Minsavage v. Bd. of Trs., Tchrs.' Pension & Annuity Fund, 240 N.J. 103, 107 (2019) (allowing for the reopening of a retirement selection "where good cause, reasonable grounds, and reasonable diligence are shown" and concluding petitioner's unforeseeable and rapid death met this threshold); Steinmann v. Dep't of Treasury, 116 N.J. 564, 576-78 (1989) (holding that the plaintiff demonstrated good cause to change her retirement selection because it was the "Board's regulation, combined with its failure to provide [the plaintiff] with information material to her decision, that prevented [the plaintiff] from selecting" a more favorable retirement option); Buono v. Bd. of Trs. Tchrs.' Pension & Annuity Fund, 188 N.J. Super. 488, 493 (App. Div. 1983) (holding a petitioner seeking

relief for good cause "must demonstrate extreme hardship and a clear equity in his [or her] favor" and a "mere subsequent change in decisional law was not [a] sufficient basis").

Against this background, we find no abuse of the Division's discretion. We are convinced H.S.'s argument that she established good cause based upon prudent "financial planning" satisfies no reasonable definition or interpretation of good cause. Further, her decision to voluntarily wait to vest her SSRI benefits reflects a deliberate decision on her part that is entirely within her control and reflects a failure to undertake the necessary statutory requirements to qualify for ABD Medicaid benefits. Simply put, her explanation lacks the hardship and unique and individualized circumstances, which underscore the nature of a good cause showing.

We are satisfied, H.S., who readily admits she has deliberately not taken her SSRI benefits, has failed to "take all necessary steps to obtain" those benefits. N.J.A.C. 10:72-3.8. As noted, her intentional decision to forgo her SSRI benefits does not comport with the eligibility requirements of the ABD Medicaid program, of which the limited funds exceed demand. Further, her belief that she would be eligible for benefits has limited bearing on whether OCBSS would find her eligible. As the Division cogently explains, even if H.S.

13

would be eligible for benefits, receipt of SSRI would affect OCBSS's determinations regarding her income and resources, and in turn, the extent of her eligibility for benefits.

In light of our decision with respect to her SSRI benefits, we need not address whether H.S. provided the proper verification with respect to her shelter expenses. Further, we discern from the record that H.S. will soon reach her maximum age to receive her SSRI benefits. Nothing in our opinion prevents H.S. from resubmitting her application should she choose to do so.

To the extent we have not specifically addressed any of the parties' remaining arguments, it is because we have determined they lack sufficient merit to warrant extended discussion in a written opinion and the administrative decision is supported by sufficient credible evidence on the record as a whole. See R. 2:11-3(e)(1)(D) and (E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

14

A-0747-24